HENSEL, BRUCKMANN & LORBACHER, INC., FOR VERONA DYESTUFFS *v.* UNITED STATES (No. 5079)*

*C.A.D. 787.

16

United States Court of Customs and Patent Appeals, January 12, 1962

*Eugene R. Pickrell* (*Murray Sklaroff*, of counsel) for appellant.
*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster*, trial attorney, of counsel) for the United States.

[Oral argument November 17, 1961, by Mr. Sklaroff and Mr. Auster]

Before RICH, Acting Chief Judge, and MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK*

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, A.R.D. 130, affirming the judgment of a single judge sitting in reappraisement. ▮ The merchandise involved is a coal tar dye classified under the provisions of paragraph 28, Tariff Act of 1930. The merchandise, invoiced as Diamond black PLC, was exported from West Germany on August 7, 1955 and entered the United States at the port of New York on August 19, 1955. It was appraised, by virtue of the provisions of paragraph 28(c) of the Tariff Act of 1930, on the basis of American selling price, as defined in section 402(g) of said tariff act as amended by the Customs Administrative Act of 1938, at $2.057 per pound, less 1 per centum, packed.

The case was submitted for decision by the trial judge upon a stipulation of facts reciting the following:

1. That the above product was not competitive with a domestic product at any time before July 5, 1955, and was listed as non-competitive in the Supplementary Competitive and Non-Competitive Lists prepared for public distribution by the U.S. Appraiser of Merchandise, New York, New York, in accordance with the provisions of Section 14.5(d) of the Customs Regulations, copies of

---

*United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

which are appended hereto as Plaintiff's Collective Exhibit I, and that importations of Diamond Black PLC were uniformly appraised on a non-competitive basis if imported prior to July 5, 1955;

2. That on July 5, 1955, a domestic manufacturer, National Aniline Division of Allied Chemical & Dye Corporation, submitted a sample of Superchrome Black CD to the Chief Chemist of the U.S. Customs Laboratory, at New York, New York, in accordance with Section 14.5 of the Customs Regulations, T.D. 53594, as amended by T.D. 53689;

3. That the said domestic manufacturer on July 5, 1955, and thereafter, freely offered for sale and sold for domestic consumption and said Superchrome Black CD to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market;

4. That the Supplementary Competitive and Non-Competitive lists dated November, 1955, for the first time, showed Diamond Black PLC to be competitive (copy of which is appended hereto and marked Plaintiff's Exhibit II).

5. That the Appraiser notified the importer on February 7, 1956, that Diamond Black PLC was competitive with the above named product. IT IS FURTHER STIPULATED AND AGREED that if the Court is of the opinion that the proper basis of appraisement is the American selling price, that the appraised value is correct, and that if the proper basis of appraisement is United States value, the United States value at the time of exportation was $1.0822 per pound, net packed.

\*    \*    \*    \*    \*    \*    \*

The provisions of the law which are pertinent to the issues here are set out below.

Paragraph 28(c) of the Tariff Act of 1930:

PAR. 28.   Coal-tar products:

\*    \*    \*    \*    \*    \*    \*

(c) The ad valorem rates provided in this paragraph shall be based upon the American selling price (as defined in subdivision (g) of section 402, Title IV), of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then the ad valorem rate shall be based upon the United States value, as defined in subdivision (e) of section 402, Title IV.

\*    \*    \*    \*    \*    \*    \*

Sections 402(e) and 402(g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

SEC. 402.   VALUE

\*    \*    \*    \*    \*    \*    \*

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

\*    \*    \*    \*    \*    \*    \*

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Section 315 (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953 : [1]

## SEC. 315. EFFECTIVE DATE OF RATES OF DUTY.

\* \* \* \* \* \* \*

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

Also pertinent to the issues in Section 14.5 (d) of the Customs Regulations, which reads :

(d) The appraiser at New York shall from time to time issue lists of coal-tar products which he believes to be competitive and non-competitive within the contemplation of subparagraphs (c) and (d) of paragraph 27 or 28 of the tariff act, and add articles thereto or remove articles therefrom as investigation shall justify. This list is advisory only and in no manner relieves appraising officers from the duty of independent appraisement required by law. The appraiser shall furnish copies of such lists and amendments thereof to the Customs Information Exchange for circulation among other appraising officers and the public upon request.

The Customs Court held that the trial court correctly found that paragraph 28(c) required the appraisement of the instant goods at the American selling price, as defined in section 402(g), for the reason that a competitive domestic product existed at the time of export. In reaching this conclusion, the Customs Court did not agree with the contention of appellant that appraisal of the goods at the United States value, defined in section 402(e), for the period of two years prior to August 5, 1955 when there was no competitive domestic product, resulted in an established and uniform practice which could properly be changed only after giving advance notice under the pro-

[1] The 30-day period of time in this Section has been extended to 90 days by a ruling of the Treasury Department, T.D. 53093.

visions of section 315(d). Instead, the court concluded that section 315(d) is not applicable here.

Appellant points out that appraising the goods on the basis of American selling price resulted in a greater amount of duty than would have been assessed on the basis of United States value, which constituted the basis for assessment during the preceding period. Apparently on this basis, appellant regards the action in this case as involving an administrative ruling resulting in the imposition of a higher rate or charge requiring the statutory notice according to the provisions of section 315(d). With respect to that section, appellant urges that "there is no limitation on how the increased duty or charge arises, i.e., whether by change in classification and rate or by change in amount of duties resulting from something other than a mere change in classification," and that such notice thus is necessary in either event.

We agree with the conclusion reached by the Customs Court that section 315(d) is not applicable in this situation. It is apparent that the requirements of this section must be fulfilled only when an "administrative ruling" is involved. No such "ruling" is present here. The appraiser merely complied with a statutory mandate which was conditioned upon the happening of a certain event, viz, a domestic manufacturer freely offered for sale and sold for domestic consumption a competitive product. When this event took place the statute required that the appraiser evaluate the merchandise at bar on the basis of the American selling price. This he did.

Furthermore, the previous basis of valuation, United States Value, was not predicated on "an established and uniform practice" and the Secretary of the Treasury must find such practice before the section becomes operative. It so happened that in this case there was no domestic competitive product for some time but that was due to the fact that no American manufacturer produced a competitive product during that period, not because of a uniform practice established by the Secretary of the Treasury. As a matter of fact, paragraph 28(c) requires the appraiser upon each importation of this merchandise to ascertain whether a competitive domestic product exists at the time of importation, and if it does, the American selling price would then be the basis for evaluation, and if it does not, the United States value would control.

The United States value as the basis for evaluating the merchandise could have been the proper one for a week, a month, a year, ten years, or indefinitely, depending entirely upon American manufacturers. On the other hand, it could have changed from one to the other at any time. Certainly, Congress did not contemplate that the applicability of section 315(d) would be predicated only on the length of time that a certain situation existed, as appellant would have us believe. The

fallaciousness of this argument is obvious when it is carried to its ultimate conclusion; i.e., if no American product was produced for a week, a month, or perhaps six months, the section would not apply because presumably no uniform practice was established, but somewere along the line, thereafter, the section would become controlling.

Another significant phase of this controversy was adaptly discussed by the Customs Court, Appellate Division, where it stated:

In the face of a showing that a competitive domestic product was so freely offered at the time of exportation of the imported article, which is exactly the case here, the combined provisions of paragraph 28(c) and section 402(g) operate simultaneously to direct a return of value predicated upon American selling price and to eliminate United States value as a potential basis of appraisement. This being so, it is immaterial that prior to the time of exportation the absence of a competitive domestic product had permitted the alternative basis provided for in said paragraph 28(c) to be invoked for a sustained period. Indeed, the statutory mandate to consider the conditions under which a competitive domestic article is marketed *at the time of exportation* of the imported product implicitly negates the conception of an established and uniform practice.

A purely fortuitous circumstance, quite without legal significance affecting the appraisement of merchandise, was the fact that for upwards of 2 years no American coal-tar product was competitive with the imported Diamond black PLC, and that, therefore, such material was appraised on the basis of United States value. The appraiser's action in this respect reflected the prevailing market conditions, but it was in no sense an established and uniform course pursued as the result of a definitive administrative practice. It was a series of independent findings reached anew for each prior importation of this product to meet conditions then existing, and consistent solely by reason of the continued absence from the market of a competitive domestic coal-tar product. To say, however, that the appraiser was required to follow his prior "consistent" practice of using United States value as the basis of appraisement until such time as due notice of change in practice has been furnished is to ignore the explicit precepts of the two applicable statutory provisions.

Appellant argues that the decision in *United States* v. *Fred Whitaker Company, Inc.*, 40 CCPA 19, C.A.D. 492, supports its position. That case is clearly distinguishable from the one at bar. There is no similarity in the factual situation whatsoever. There the established practice of using a particular test to determine the "clean content" of imported "greasy wool" was changed by the collector in favor of a new test. This court held that the "clean content" found through the new test was greater than the value intended by the statute and referred, incidentally, to the lack of compliance with section 315 under the circumstances. Here we have found there was no established uniform practice within the purview of that section and, therefore, if none existed it could not be changed.

For the foregoing reasons the judgment of the Customs Court is *affirmed.*

WORLEY, C. J., did not sit or participate in the decision.